UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYRONE DOUGLAS CAROLINA, : | |
|     Plaintiff, : | |
| : | |
|     v. : | CASE NO. 3:12-cv-163 (VLB) |
| : | |
| LT. MIKE PAFUMI, et al., : | |
|     Defendants. : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #35]**

In this civil rights action, the plaintiff, Tyrone Douglas Carolina, alleges that the defendants used excessive force against him by spraying him with a chemical agent and that medical staff knew that he had a medical condition precluding such use and should have intervened to prevent use of the chemical agent. The named defendants are Lieutenant Mike Pafumi, Captain Knapp, Dr. Wright and Nurse Victoria Scruggs.[1] Pending is the defendants' motion for summary judgment. For the reasons that follow, the defendants' motion is granted.

I.    Standard of Review

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law. See Rule 56(a), Fed. R. Civ. P.; In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by

---

[1]The plaintiff incorrectly names three of the defendants as Captain Napp,

1

showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment.  Zigmund v. Foster, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

      When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment.  Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).

---

Dr. Write and Nurse Vicki.  The court uses the correct spellings in this ruling.

## II.     Facts[2]

The incidents underlying the complaint occurred at Northern Correctional Institution.  On December 6, 2011, the plaintiff informed correctional staff that he had fallen.  Defendant Wright went to the plaintiff's cell and ordered that he be transported to the medical unit by wheelchair.  The plaintiff was examined and placed in a medical cell.

Later in the morning, the plaintiff became noncompliant and was forcibly removed from the cell.  A chemical agent was deployed three times during the cell extraction.  First, defendant Pafumi sprayed one burst of a stream of Mark IV Oleoresin Capiscum ("OC"), which is intended to target the eyes and affects only the eyes.  The spray had little effect because plaintiff was covering his eyes with his arms.  Second, defendant Pafumi deployed a burst of Z305 OC, a chemical agent intended to be inhaled.  This chemical agent makes it difficult for the inmate to take deep breaths.  The plaintiff rolled over and the Z305 OC had

---

[2]The facts are taken from the defendants' Local Rule 54(a) Statement and the exhibits attached to the defendants' motion for summary judgment.
   Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of disputed factual issues.  See D. Conn. L. Civ. R. 56(a)2 & 56(a)3.
   Despite receiving notice of his obligation to respond to the motion for summary judgment and the contents of a proper response, the plaintiff has neither timely opposed this motion nor sought additional time within which to do so.  See Doc. #35-7.  Accordingly, the defendants' facts are deemed admitted.  See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

minimal effect.  Three minutes later, defendant Pafumi deployed a second application of Z305 OC.  The plaintiff began to cough and his breathing became shallow.  The plaintiff continued to be able to speak after this third deployment.  The cell extraction team then entered the cell, removed the plaintiff and properly decontaminated him.  The plaintiff does not suffer from any medical condition that would preclude the use of a chemical agent and suffered no ill-effect as a result of the use of the chemical agents.

### III.  Discussion

The plaintiff asserts two claims, that defendants Pafumi and Knapp used excessive force against him and that defendants Wright and Scruggs knew that his medical condition precluded use of a chemical agent against him but failed to intercede on his behalf.

### A.  Defendants Pafumi and Knapp

When considering the use of force by correctional officers, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992) (internal quotation marks and citation omitted).

The court considers objective and subjective components to an excessive force claim.  The objective component relates to the level of physical force used against the inmate and whether that force is repugnant to the conscience of mankind.  The subjective component focuses on whether the correctional officers

had a "wanton" state of mind when they were applying the allegedly excessive force.  See id. at 8-10.

An excessive force claim cannot be decided merely by considering the extent of an inmate's injuries.  See Perkins v. Brown, 285 F. Supp. 2d 279, 283 (E.D.N.Y. 2003) (acknowledging that claim of excessive force may be established even if the victim does not suffer serious or significant injury) (citations omitted). Instead, the court uses the extent of the inmate's injuries as one factor in determining whether the use of force could have been thought necessary by correctional staff or demonstrated an unjustified infliction of harm.  See Hudson, 503 U.S. at 7.  Other factors to be considered are the need for use of force, the threat perceived by correctional staff and the relationship between the perceived threat and the amount of force used.  Id.  For example, an inmate who does not suffer serious or significant injury may establish a claim for use of excessive force if he can show that the force used was more than *de minimis* or was repugnant to the conscience of mankind and that the defendant acted with a sufficiently culpable state of mind.  United States v. Walsh, 194 F.3d 37, 48–50 (2d Cir. 1999).

This approach is consistent with the view that "[e]xcessive force does not, in and of itself, establish malice or wantonness for Eighth Amendment purposes."  Romano v. Howarth, 998 F.2d 101, 106 (2d Cir. 1993); see, e.g., Johnson v. Blaukat, 453 F.3d 1108, 1113 (8th Cir. 2006) (affirming denial of summary judgment on excessive force claims where questions existed regarding, *inter alia*, whether actions of correctional staff "were necessary to maintain order

5

or were excessive reactions by frustrated officers; and whether the amount of force used was commensurate with the situation . . . whether verbal orders or the application of less force would have been sufficient, whether or not a warning issued before application of the pepper spray").

The Supreme Court encourages courts to "give a wide range of deference to prison officials acting to preserve discipline and security." Whitley v. Albers, 475 U.S. 312, 321–22 (1986).  Courts considering the use of chemical agents have held that deployment of a chemical agent is not an unacceptable means of controlling an unruly or disruptive inmate. *Horne v. Coughlin*, 155 F.3d 26, (1998) (Restraints on inmate do not violate Eighth Amendment unless they are totally without penological justification, grossly disproportionate, or involve unnecessary and wanton infliction of pain), see also, See, e.g., Scroggins v. Davis, 346 F. App'x 504, 505 (11th Cir. 2009) (use of chemical agent to subdue high-risk inmate was not excessive), cert. denied, ––– U.S. –––, 130 S. Ct. 1711 (2010); Combs v. Wilkinson, 315 F.3d 548, 557 (6th Cir. 2002) (the use of chemical agents alone does not constitute "malicious or sadistic" action); Soto v. Dickey, 744 F.2d 1260, 1271 (7th Cir. 1984) ("the chemical agent was used for failure of the inmate to obey a direct order and the use of mace was a reasonable response to the institution's legitimate security concern").

When reviewing the use of a chemical agent against a recalcitrant inmate, the court can find a constitutional violation only where the use of the chemical agent is malicious and sadistic. That the use may have been objectively unreasonable is insufficient to establish an Eighth Amendment claim.  See Horne

6

v. Coughlin, supra., Howard v. Nunley, No. CV–06–00191–NVW, 2010 WL 3785536, at *4 (E.D. Cal. Sept. 24, 2010) (considering use of chemical agent against inmate who deliberately violated direct orders).

Where the parties tell conflicting versions of an incident and one version is supported by a videotape, the court must credit that version of events.  See Scott v. Harris, 550 U.S. 372, 380-81 (2007).  Courts within this circuit have relied on videotape evidence to grant motions for summary judgment in cases involving claims of excessive use of force including use of chemical agents.  See Flemming v. Kemp, No. 09-CV-1185 (TJM/DRH), 2012 WL 4094196, at *11-12 (N.D.N.Y. Aug. 30, 2012) (citing cases), report and recommendation adopted by, 2012 WL 4094009 (N.D.N.Y. Sept. 17, 2012).

The application of force in this case is the deployment of a chemical agent.  The deployment of the chemical agent was captured on videotape and a videotape of the deployment was submitted as evidence in support of the subject motion for summary judgment.  The defendants argue that the use of the chemical agent was warranted and in accordance with Department of Correction policy.  The first two uses were ineffective because the plaintiff successfully covered his face.  When the third use had an effect, no further bursts were deployed.  The chemical agent was deployed into the plaintiff's single cell and was used in response to his continued refusal to comply with orders to leave the cell to be examined by medical staff.  The chemical agent was used in lieu of hands-on force.  Once the plaintiff was restrained, he was immediately escorted to the shower area for decontamination.  The videotape of the deployment of the

chemical agent confirms the defendants' description of the events.

Defendants Knapp and Pafumi were complying with department procedures. Department of Correction Administrative Directive 6.5, section 7(D), sets forth the factors that should be considered when deciding whether to use a chemical agent. First, staff considers the threat posed by the inmate, *i.e.*, is the inmate displaying active aggression, are weapons present, does the inmate have a known history of assaulting behavior, or is the inmate failing to comply with lawful orders. Second, staff should evaluate the potential injury to staff or the inmate himself. Third, staff considers the area in which the chemical agent would be deployed. Fourth, staff must determine the potential exposure or impact deployment of the chemical agent would have on persons who are not involved in the incident. Fifth, staff must consider the existence of any known physical condition or medical or mental health concern, such as a heart or respiratory condition, that might contraindicate use of a chemical agent. Sixth, staff evaluates whether the inmate persists in refusing to comply with direct orders. Seventh, staff considers the inmate's disciplinary history. See Doc. #35-5, Exh. C at 9-10.

The defendants have submitted the affidavit of Deputy Warden Daniel Murphy, the OC program coordinator for the Department of Correction and person who trained defendant Pafumi in the use of OC. After reviewing the videotape of the incident, Deputy Warden Murphy stated that the use of OC during the incident was appropriate and in accordance with Department of Correction policy. See Doc. #35-5 at 4, ¶ 19.

**The evidence shows that the plaintiff was refusing to comply with direct lawful orders. If further established that the Plaintiff was in need of medical attention and was refusing to leave his cell to receive that attention and that delay could have been injurious to him. The evidence also shows that the agent was deployed in a limited area which minimized the risk of exposure of others. Further, it shows that the Plaintiff resisted the two initial deployments necessitating a third deployment to effectuate his extraction and receipt of medical assistance. Finally, the record establishes that Defendants Knapp and Pafumi confirmed with medical staff that the use of a chemical agent was not contraindicated by the plaintiff's medical condition. The chemical agent was deployed in the plaintiff's single cell; no other inmate was affected. The court finds that the use of the chemical agent was in accordance with departmental policy.**

The Court concludes that, even if it were to determine that the use of OC was unreasonable, the record contains no evidence suggesting that defendants Knapp and Pafumi were acting maliciously or sadistically when they deployed OC into the plaintiff's cell. Accordingly, the motion for summary judgment in GRANTED on this claim.

B.   <u>Defendants Wright and Scruggs</u>

The plaintiff contends that defendants Wright and Scruggs knew that he had a medical condition that contraindicated use of a chemical agent, but failed to intercede to prevent that use. The Court construes this as a claim that

9

defendants Wright and Scruggs failed to protect him from harm or were deliberately indifferent to a serious medical need.

Prison officials have a duty to make reasonable efforts to ensure inmate safety.  To establish a constitutional violation, a prisoner must show that the conditions of his incarceration posed a substantial risk of serious harm and that the prison official was deliberately indifferent to his safety.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate indifference exists where the official both knows of and disregards an excessive risk to inmate safety.  See id. at 837.

To state such a claim for deliberate indifference to a serious medical need, the plaintiff must allege facts demonstrating sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. See Estelle v. Gamble, 429 U.S. 97, 104-06 (1976).  There are both subjective and objective components to the deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  Objectively, the alleged deprivation must be "sufficiently serious."  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The condition must produce death, degeneration or extreme pain.  See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions.  Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).

Defendant Wright states in his affidavit that the plaintiff suffers from mild

10

cardiomyopathy, an enlarged heart. Defendant Wright further states, however, that this condition does not indicate that OC should not be used against the plaintiff. After reviewing the plaintiff's medical records, defendant Wright indicates that the plaintiff suffered no ill effect from the use of OC. <u>See</u> Doc. #36-6, Wright Aff., ¶¶ 6-8.

Although the plaintiff noted in his complaint that he also has a heart murmur and has attached inmate requests indicating that his medical records contain documentation of his various heart conditions, he has not responded to the motion for summary judgment. As he has provided no medical evidence documenting his claimed conditions and no evidence suggesting that he cannot be exposed to chemical agents, the plaintiff fails to establish facts showing that defendants Wright and Scruggs should have known that OC should not be used against him. Thus, there is no genuine issue of material fact that would preclude summary judgment on a claim of failure to protect or deliberate indifference to a serious medical need. The defendants' motion for summary judgment is GRANTED as to the claims against defendants Wright and Scruggs.

**C. <u>Appointment of Counsel</u>**

The Court notes that on November 19, 2012 the Court set a December 10, 2012 dispositive motion deadline. On December 6, 2012 the Defendant requested and the Court granted an extension the deadline to file a motion for summary judgment until January 10, 2013. On December 12, 2012 the Plaintiff filed a motion for the appointment of counsel. On December 17, 2012 the Court denied

**Plaintiff's motion for the appointment of counsel stating "The plaintiff does not indicate that he has made any attempt to obtain representation or legal assistance in this matter from private attorneys or from Inmates' Legal Assistance Program, the organization created to provide legal assistance to Connecticut inmates. Furthermore, he has not attached any information regarding the status of his prisoner account. At this stage in the case, the dispositive motion deadline has not yet expired. Consequently, the merits of this case are not yet known. Therefore, appointment of counsel is premature at this stage and the plaintiff's motion is denied without prejudice." [Dkt. No. 36]. The State did not file its motion for summary judgment until on February 15, 2013, more than a month after the deadline.  The Plaintiff filed a second motion for the appointment of counsel 10 days later; however, the second motion for the appointment of counsel suffered from the same fatal deficiency as the first in that it too failed to state the efforts the Plaintiff made to secure representation as instructed as the Court instructed in its denial of the first motion.   The Court thus denied Plaintiff's second motion for the appointment of counsel.**

IV.     **Conclusion**

The defendants' motion for summary judgment [Doc. #35] is GRANTED. The Clerk is directed to enter judgment in favor of the defendants and close this case. It is so ordered.

                                        IT IS SO ORDERED.

                                        _____/s/_____
                                        Vanessa L. Bryant
                                        United States District Judge

Dated at Hartford, Connecticut: April 17, 2013.